UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAURICIO MENA AND ALMA MENA,<br><br>             Plaintiffs,<br>      v.<br><br>JP MORGAN CHASE BANK, N.A.; U.S. BANK, N.A.; BANK OF AMERICA, N.A.,<br><br>             Defendants. | Case No.: 12-1257 PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(Re: Docket No. 15)** |

In this mortgage foreclosure action, Plaintiffs Mauricio Mena and Alma Mena ("Plaintiffs") seek to prevent foreclosure on their home loan. Defendants JP Morgan Chase Bank, N.A., U.S. Bank, N.A., and Bank of America, N.A. (collectively "Defendants") move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1] Plaintiffs oppose the motion.[2] Defendants have not submitted any reply briefing. On September 4, 2012, the parties appeared for a hearing. Having considered the arguments and evidence presented, the court GRANTS-IN-PART Defendants' motion to dismiss with LEAVE TO AMEND.

---

[1] *See* Docket No. 15 (Defs.' Mot. To Dismiss Compl.).

[2] *See* Docket No. 18 (Pls.' Opp'n to Def.'s Mot. to Dismiss).

Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## I. BACKGROUND

Except where otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from Plaintiffs' Complaint.[3] On March 15, 2007, Plaintiffs obtained a loan from Washington Mutual Bank ("WaMu") on real property located at 1777 Nomark Ct., San Jose, California 95125 (the "Property"). Plaintiffs signed a first Deed of Trust ("first DOT") against the Property to secure a Promissory Note ("the Note") in the amount of $1,000,000. The Note names WaMu as original Lender and Beneficiary. The first DOT names California Reconveyance Company ("CRC") as Trustee.[4] On the same day, Plaintiffs also signed a second Deed of Trust ("second DOT") against the Property to secure a second Promissory Note in the amount of $237,363. The second DOT and second Note also names WaMu and CRC as beneficiary and trustee, respectively.[5] Both sets of documents were recorded the following week in Santa Clara County.[6]

On April 26, 2007, WaMu endorsed and transferred its interest in the Note and both DOTs to WaMu Asset Acceptance Corp., which endorsed and transferred its interest to a New York Mortgage Backed Security Trust, "Mortgage Pass-Through Certificates Series 2007-OA4 ("the WaMu Trust").[7] On January 4, 2008, WaMu Asset Acceptance Corp., as depositor, filed a Form 15-15D with the Securities and Exchange Commission ("SEC") terminating the registration of the WaMu Trust with the SEC.[8] On March 28, 2008, the WaMu Trust filed a Form 10-K with the SEC,

---

[3] *See* Docket No. 1 (Compl.). The Complaint references various "Attachment[s] of the Auditor's Report," but a review of the docket shows no report or attachments filed with the Complaint. The only "Auditor's Report" is that filed as Exhibit A to the Declaration of Michael Yesk in Support of Plaintiffs' Opp'n to Defs.' Mot. To Dismiss. *See* Docket No. 18.

[4] Docket No. 1 ¶ 14.

[5] *Id.* ¶ 15.

[6] *Id.* ¶¶ 14, 15.

[7] *Id.* ¶ 16.

[8] *Id.* ¶ 17.

2
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

purportedly dissolving the WaMu Trust.[9] Plaintiffs allege that under Washington state law, the assets of the WaMu Trust were distributed to the WaMuTrust's certificate holders.[10]

On November 3, 2009, Defendant JPMorgan Chase, N.A. ("Chase") transferred its beneficial interest (or purported beneficial interest) under the first DOT to U.S. Bank as Trustee. Chase executed and recorded the transfer in an Assignment of Deed of Trust ("first Assignment") prepared by CRC and recorded on November 12, 2009 in Santa Clara County. The notarized signature on the first Assignment is of one "Deborah Brignac" as Vice President of Chase.[11] Also on November 3, 2009, CRC recorded a notice of default and election to sell" ("Notice of Default") and began foreclosure proceedings against Plaintiffs.[12] The Notice of Default states that the beneficiary or agent has complied with California Civil Code § 2923.5.[13]

CRC then sent Plaintiffs a notice of trustee's sale ("first Notice of Sale"), which announced CRC's intention to foreclose on the Property on March 8, 2010. The signature on the notice is again that of Deborah Brignac, but as Vice President of CRC.[14] CRC claimed to act on behalf of WaMu, the original beneficiary under the Deed of Trust.[15] On February 3, 2011, Chase executed and recorded a second Assignment of Deed of Trust ("second Assignment"), transferring all beneficial interest under the first DOT to La Salle Bank as Trustee for the WaMu Trust.[16] The

---

[9] *Id.* ¶ 18.

[10] *Id.* Defendants disagree with Plaintiffs' assertion that the filing of Form 10-K with the SEC dissolved the trust, or that the assets of WaMu Trust were distributed to the Certificateholders as a result. Defendants state that on September 25, 2008, WaMu was declared insolvent and the FDIC was appointed Receiver ("FDIC-Receiver"). On that same day, pursuant to a Purchase and Assumption Agreement, JPMorgan Chase Bank, N.A. obtained any and all right, title, and interest to WaMu's assets. *See* Docket No. 15 at 2; Defs.' Request for Judicial Notice in Support of Mot. To Dismiss, Ex. D (Docket No. 16) ("Request for Judicial Notice").

[11] Docket No. 1 ¶ 19.

[12] *Id.* ¶ 20.

[13] *Id.*

[14] *Id.* ¶ 21.

[15] *Id.*

[16] *Id.* ¶ 22.

3
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

1  second Assignment was recorded on February 15, 2011 in Santa Clara County. The notarized
2  signature on the second Assignment is of one "Wanda Chapman" as Vice President of Chase.[17]

3  For the second time, CRC sent Plaintiffs a notice of trustee's sale ("second Notice of Sale")
4  announcing CRC's intention to foreclose on the Property on March 21, 2011 and naming WaMu as
5  the beneficiary. The signature on the notice is that of Elvia Arciniega as Assistant Secretary of
6  CRC.[18] CRC also sent Plaintiffs a third notice of trustee's sale ("third Notice of Sale") announcing
7  CRC's intention to foreclose on the Property on August 23, 2011. The signature on the notice is
8  that of Casey Kealoha as Assistant Secretary of CRC. CRC again claimed to act on behalf of
9  WaMu, the original beneficiary under the Deed of Trust.[19]

10 Plaintiffs filed this action on March 14, 2012. The Complaint alleges causes of action for:
11 (1) Slander of Title; (2) Wrongful Foreclosure; and (3) injunctive relief.[20]

## II.   LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[21] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[22] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged

---

[17] *Id.*

[18] *Id.* ¶ 23.

[19] *Id.* ¶ 24.

[20] *See generally id.*

[21] Fed. R. Civ. P. 8(a)(2).

[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

4

Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[24]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[25] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[26] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[27] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[28]

### III. DISCUSSION

#### A. Request for Judicial Notice

Defendants request judicial notice of the following: foreclosure-related documents recorded in the Santa Clara County Recorder's Office (Exs. A, E-K); SEC filings available to the public through the EDGAR database (Exs. B, C); and the purchase and assumption agreement between WaMu and Chase, available to the public through the Federal Deposit Insurance Corporation's ("FDIC") website (Ex. D).[29] Plaintiffs object to Defendants' request with respect to the SEC filings and purchase and assumption agreement on the ground that those are not recorded documents as defined by the Ninth Circuit in *Lee v. City of Los Angeles*.[30] Plaintiffs further object to judicial

---

[24] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[25] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[26] *See id.* at 1061.

[27] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[28] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[29] *See* Docket No. 16.

[30] *See Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).

5
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

notice of disputed facts contained in the publicly recorded foreclosure documents.[31] Plaintiffs, however, also have submitted documents for the court's consideration in support of Plaintiffs' opposition to the motion to dismiss. The "Securitzation Analysis Report"[32] itself contains exhibits that appear to be identical to those that are the subject of Defendants' Request for Judicial Notice, including the first and second DOT, the assignments of DOT, and the Notice of Default and Notices of Trustees' Sale.

Defendants have not requested that the court take notice of disputed facts within the documents, and the court will not rely on facts contained therein that reasonably may be subject to dispute.[33] The authenticity of the foreclosure-related documents, the SEC filings, and the purchase and assumption agreement filed with the FDIC, moreover, is not in dispute and may be verified by resort to the public record.[34] Defendants request for judicial notice is GRANTED as to the all of the documents.

### B. Motion to Dismiss

Defendants argue as a preliminary matter that California law does not "provide for judicial action to determine whether the person initiating the foreclosure process is [] authorized" to begin with.[35] In *Gomes v. Countrywide Home Loans, Inc.*, the court reiterated the nonjudicial nature of California's foreclosure scheme and courts' refusal "to read any additional requirements into the non-judicial foreclosure statute."[36] The court in *Gomes* distinguished the issue before it, which was whether "the noteholder's nominee [must] prove its authority to initiate a foreclosure proceeding"

---

[31] *See* Pls.' Objections to Defs.' Request for Judicial Notice (Docket No. 18-2).

[32] *See* Docket No. 18, Ex. A.

[33] *See Lee*, 250 F.3d at 689 (finding the district court erred in relying on disputed facts contained within documents that otherwise were the proper subject of judicial notice). *See also* Fed. R. Evid. 201(b).

[34] *See* Fed. R. Ev. 201(b)(2).

[35] Docket No. 15 at 6 (quoting *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1154 (2011)).

[36] 192 Cal. App. 4th at 1154 (citations omitted). *See also* Cal. Civ. Code § 2924(a):

6
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

from other, non-binding cases in which district courts had allowed to proceed an action to determine whether the "wrong party had initiated the foreclosure process" due to an irregularity in the assignment of deed of trust.[37] Other district court have relied in part on this distinction in allowing a plaintiff's wrongful foreclosure claims where the plaintiff asserts a "specific factual basis" for which to challenge whether the party authorizing the foreclosure had such authority.[38]

Plaintiffs argue that this case presents a specific factual basis for challenging the authority underlying the initiation of the foreclosure process. Whether Plaintiffs are correct that the allegations suffice to sustain the causes of action will be explored below. The court agrees with the premise, however, that judicial action may be used to challenge a nonjudicial foreclosure process where the specific facts alleged in the complaint, taken as true at the pleading stage, demonstrate a failure to effect a valid transfer of beneficial interest in a manner that renders void the initiation of nonjudicial foreclosure.[39] This is consistent with California Civil Code § 2924(a) allowing only a "trustee, mortgagee, or beneficiary, or any of their authorized agents" to initiate the foreclosure process. The court therefore turns to the allegations of wrongful foreclosure and slander of title to determine whether they establish that the entity or entities proceeding under the nonjudicial foreclosure scheme held no beneficial interest in the Property at the pertinent time and lacked authority under the statute to proceed.

### 1. Slander of Title

Slander of title "occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss."[40] "The recordation of an

---

[37] *See id.* at 1155.

[38] *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D. Cal. Dec. 15, 2011); *Sacchi v. Morg. Elec. Registration Sys., Inc.*, No. CV-11-1658 AHM (CWx), 2011 WL 2533029, at *7-8 (C.D. Cal. June 24, 2011).

[39] *Cf. Sacchi*, 2011 WL 2533029 at *5 ("It is true … that California Civil Code § 2924, et seq. authorizes non-judicial foreclosures in this state. It is not the case, however, that the availability of a nonjudicial foreclosure process somehow exempts lenders, trustees, beneficiaries, servicers, and the numerous other (sometimes ephemeral) entities involved in dealing with Plaintiffs from following the law.")

[40] *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 85 (1997).

7
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

instrument facially valid but without underlying merit will give rise to an action for slander of title."[41] In order to state a claim for slander of title, Plaintiffs must allege: "1) a publication, 2) which is without privilege or justification, 3) which is false, and 4) which causes direct and immediate pecuniary loss."[42]

Defendants contend that Plaintiffs cannot sustain a claim for slander of title. In particular, Defendants argue that Plaintiffs cannot allege falsity because CRC was the duly authorized trustee under the DOTs and Civil Code § 2924(a) entitled to initiate non-judicial foreclosure proceedings.[43] CRC's recording of both the Notices of Default and all three Notices of Sale was therefore proper. Defendants also argue that Plaintiffs cannot state a claim for slander of title because the recordation of the Notice of Default and Notice of Trustees' Sale is privileged under Civil Code § 47(c)(1) pursuant to § 2924(d)(1). Finally, Defendants dispute that the first and second DOTs cloud Plaintiffs' title because those instruments merely transfer and do not create an interest in the Property. Plaintiffs further have not alleged how these documents cause direct pecuniary loss.

Plaintiffs respond first that falsity is alleged because the signatures on the relevant documents are of "robo-signers" who lacked the legal capacity to sign, rendering them invalid. For example, "Deborah Brignac" is a "robo-signer" whose name appears on documents for different companies.[44] As will be explored below, Plaintiffs also argue that Chase had no interest to assign in the DOTs based on the transfer dates and the dissolution of the WaMu Trust. With respect to the qualified common interest privilege, Plaintiffs further respond that Civil Code § 47(c)(1) protects

---

[41] *Stamas v. City of Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal. 2011) (citing *Seely v. Seymour*, 190 Cal. App. 3d 844, 857 (1987)). *See also Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012).

[42] *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009).

[43] *See Gomes*, 192 Cal. App. 4th at 1154 (holding that Cal. Civ. Code § 2924 does not provide for judicial action in order to determinate whether a nominee is authorized to initiate foreclosure on behalf of the noteholder).

[44] *See* Docket No. 1 ¶¶ 19 (signed as Vice President of Defendant JPMorgan Chase), 21 (signed as Vice President of Defendant California Reconveyance Company).

8
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

only communications made without malice.[45] Plaintiffs argue that CRC acted in reckless disregard of the mortgagers' rights when it caused employees to sign documents without legal authority that it knew would initiate the foreclosure process. Plaintiffs allege that without legally authorized signatures and without a transfer of beneficial interest to Chase, the notice of default and all three notices of trustees' sale are invalid, null and void, and constitute an improper cloud on the title of the Property.

Plaintiffs have pled sufficiently the elements of publication and falsity. Defendants do not dispute that the publicly-recorded Notice of Default and Notices of Trustees Sale constitute "publication" under the statute. Although Plaintiffs have alleged several bases for falsity, at least two of these fail because the allegation is contradicted on its face by documents judicially-noticed by the court and referenced in the Complaint. For example, an allegation that CRC lacked the legal authority to initiate the foreclosure process is not supported by the DOTs, incorporated by reference into the Complaint. The first DOT provides that the "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the [Property];" and the listed "Trustee" is "California Reconveyance Company, a California Corp." [46] Plaintiffs do not dispute this fact or challenge CRC as Trustee under the DOTs. Thus, under § 2924(a), as the Trustee, CRC was authorized to initiate the sale and to record the notices of default and of trustees' sale.[47]

The court accepts as true, however, Plaintiffs' allegations based on false signatures or unauthorized signatures. The Complaint alleges two or more places in which the same individual purportedly signed foreclosure notice documents under as a different company representative, or where two different signatures signed as the "Vice President" of Chase.[48] Defendants do not challenge this allegation. This is sufficient to state the falsity element of the slander of title claim.[49]

---

[45] *See Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008).

[46] Docket No. 16, Ex. A at 3.

[47] *See* Cal. Civ. § 2924(a) (providing that where power of sale is conferred upon a trustee, the trustee shall first file a notice of default, followed within three months by a notice of sale).

[48] *See* Docket No. 1 ¶¶ 19, 21-24.

[49] *See, e.g.*, *Ogilvie*, 2012 WL 3010986, at *3.

9
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiffs' allegations fail to satisfy the remaining two claims: privilege and pecuniary loss. California Civil Code Section 47(c)(1) defines a privileged communication, among others, as a "communication, without malice, [made] to a person interested therein (1) by one who is also interested." The statutorily required notices in nonjudicial foreclosure procedures are privileged communications under the qualified common-interest privilege of Section 47.[50] Malice as an exception to the privilege doctrine may be established by a showing that the defendant "lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."[51] Plaintiffs argue that malice is established by CRC's recording of the assignments of DOT using false or unauthorized signatures in reckless disregard of the foreclosure process. But no such allegation is stated in the Complaint. The court will not infer mal-intent or reckless disregard from the facts as alleged.

Plaintiffs also fail to state a "direct and immediate" pecuniary harm as a result of the alleged false publication. The monetary harm pled in the Complaint is based on the alleged "impair[ment] of vendibility" to the Property, as well as Plaintiffs' need to retain attorneys and file suit in order "to cancel the instruments casting doubt on Plaintiff's title."[52] This harm is insufficient in a claim for slander of title because "fees incurred to quiet title are recoverable and fees incurred prosecuting the slander of title are not."[53]

### 2. Wrongful Foreclosure

Wrongful foreclosure is an action in equity in which the mortgagor or trustor seeks to unwind an "illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust" – or to prevent such a sale from occurring.[54] The plaintiff must

---

[50] *See id.* at *4; 168 Cal. App. 4th at 333.

[51] 168 Cal. App. 4th at 336 (citations omitted).

[52] Docket No. 1 ¶¶ 33, 34.

[53] *Ogilvie*, 2012 WL 3010986, at *4.

[54] *See id.* (quoting *Lona v. Citibank N.A.*, 202 Cal. App. 4th 89, 104 (2011)).

demonstrate prejudice or harm and, depending on whether the plaintiff is challenging a sale or seeking to prevent a pending sale, may be required to tender payment of the debt, or at least to allege the ability to tender payment.[55]

### a. Tender

The sale in this case has not yet taken place, and Defendants do not raise the "tender rule" as a basis for seeking dismissal of the wrongful foreclosure claim. Courts moreover have recognized various exceptions to the tender rule, including based on an allegation that a foreclosure sale is totally void and not merely voidable due to, for example, a notice error.[56] Under these circumstances, the court cannot find error in Plaintiffs' failure to allege compliance with the tender rule.

### b. Illegal Sale

Turning to whether Defendants' initiation of the nonjudicial foreclosure process was illegal, the court finds sufficient inconsistencies in the record as pled to sustain this element of Plaintiffs' wrongful foreclosure claim. As discussed above, based on CRC's undisputed status as Trustee under the DOTs, CRC was entitled to invoke the power of sale on the Property. But this does not resolve Plaintiffs' allegation that CRC acted on behalf of WaMu or Chase, and that neither of those entities held a valid interest to direct CRC's actions. As discussed above, the court does not find

---

[55] There is some division in the courts as to whether the "tender rule" precludes a claimant from seeking to prevent a pending nonjudicial foreclosure, as opposed to attempting to "unwind" a foreclosure that has taken place. *See Rodriguez v. Bank of America*, No. C 11–3839–PSG, 2011 WL 5864108, at *3 (N.D. Cal. Nov. 22, 2011). *Cf. Silva-Pearson v. BAC Home Loans Servicing, LP*, No. C 11-1491 SI, 2011 WL 2633406, at *2 (N.D. Cal. July 6, 2011) (finding no basis for the "tender rule" in an action challenging a pending foreclosure, as opposed to the commonly-cited line of cases requiring tender based on an attempt to set aside foreclosure); *Yazdanpanah v. Sacramento Valley Mortg. Group*, C 09-2024 SBA, 2009 WL 4573381, at *7 (N.D. Cal. Dec. 1, 2009) (dismissing claim for wrongful foreclosure on grounds that "debtor must allege a credible tender of the amount of the secure debt" regardless of pending or past status of foreclosure).

[56] *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D. Cal. Dec. 15, 2011) (finding multiple "exceptions and qualifications counsel against a blanket requirement of the tender rule at the pleading stage" based on a review of state and federal case law). *See also Ogilvie*, 2012 WL 3010986, at *6 (declining to apply the tender rule at the early pleading stage); *ING Bank v. Ahn*, No. C-09-995-TEH, 2009 WL 20893965, at *2 (N.D. Cal. July 13, 2009) (same).

11
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

that Civil Code Section 2924(a) absolves the lawful nominee or trustee from acting only on behalf of a legitimate beneficial interest.

Defendants argue that the notices of default and of trustees' sale were signed by CRC in its legal capacity and not on behalf of Chase and/or WaMu. Defendants further argue that California law does not require recordation of the alleged assignment of interest in the DOT from WaMu to the WaMu Trust. To the contrary, Defendants argue that Plaintiffs have misstated the recordation requirement of Civil Code Section 2932.5, which actually "applies only to a mortgage and not to a deed of trust."[57] Defendants further argue that the SEC filings incorporated into the Complaint did not dissolve the WaMu Trust as Plaintiffs contend. The filings indicate only that WaMu Asset Acceptance Corp. would no longer be filing reports with the SEC regarding the WaMu Trust, which "in no way constitutes dissolution of a securitized trust."[58] Pursuant to a Purchase and Assumption Agreement dated September 25, 2008, Defendants contend that Chase obtained the beneficial interest in WaMu's assets.[59]

Defendants are correct in part. First, the foreclosure documents only mention Chase in the Notice of Default, listing Chase as the entity to contact for information on the foreclosure or to arrange to make payment, i.e. as servicer of the loan.[60] The only mention of WaMu in the Notice of Default is as the "Beneficiary Recorded 03/22/2007," i.e. as the original beneficiary under the DOT.[61] In the three Notices of Trustees' Sale, however, WaMu is listed only as "Beneficiary," purportedly – according to Defendants – so that the notice makes clear under which DOT CRC is

---

[57] *See Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 122 (2011) (citations omitted). *See also Parcray v. Shea Mortgage, Inc.*, No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, at *11 (E.D. Cal. Apr. 23, 2011; *Roque v. Suntrust Mortgage, Inc.*, No. C-09-00040 RMW, 2010 WL 546896, at * 3 (N.D. Cal. Feb. 10, 2010); *Caballero v. Bank of Am.*, No. 10-CV-02973-LHK, 2010 WL 4604031, at *3 (N.D. Cal. Nov. 4, 2010).

[58] Docket No. 15 at 8 (citing RJN, Ex. B).

[59] *See* Docket No. 16, Ex. D.

[60] *See* Docket No. 16, Ex. F at 2.

[61] *See id.*

12

Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

acting.[62] But the court does not find as a matter of law that these references to "Beneficiary" are clear in meaning as Defendants contend. On their face, the documents appear to suggest that either Chase (in the Notice of Default) or WaMu (in the Notices of Trustees' Sale) are the beneficiary.

Second, Defendants correctly state that there is no requirement under California law for the foreclosing entity to have recorded the assignment of DOT. Plaintiffs argue that Civil Code Section 2932.5 limits the power of sale to be exercised only by an assignee who has recorded the assignment. Plaintiffs cite *In re Salazar*, an April 2011 decision from the Bankruptcy Court of the Southern District of California, in support of their position that the foreclosing beneficiary "had to be entitled to payment of the secured debt" and had to "appear before the sale in the public record title for the Property" as the foreclosing beneficiary.[63] Plaintiffs fail to note, however, that on appeal by the bank, the court reversed and remanded, holding unequivocally that "§ 2932.5 does not apply to deeds of trust."[64] The court in *In re Salazar* went on to hold that both the bank and the bank's nominal beneficiary and agent "are entitled to invoke the power of sale in the DOT."[65] Section 2932.5 thus does not serve as a basis to challenge the transfers by WaMu based on a failure to record. Notwithstanding Plaintiffs' failure to assert a violation of Section 2932.5 for the alleged, unrecorded transfer in beneficial interest by WaMu to the WaMu Trust,[66] Plaintiffs allegation that the subsequent, recorded assignments by Chase were void remains in place.

The court must take as true the alleged transfer of beneficial interest in April 2007 by WaMu to the WaMu Asset Acceptance Corp. and to the WaMu Trust, which Defendants do not appear to dispute. Defendants instead argue that "Plaintiffs do not allege that the U.S. Bank as successor to Bank of America as successor to LaSalle Bank as Trustee for the WaMu Trust did not

---

[62] *See id.*, Exs. G, I, J.

[63] *See In re Salazar*, 448 B.R. 814, 819-20 (Bankr. S.D. Cal. 2011).

[64] *In re Salazar*, 470 B.R. 557, 560 (Bankr. S.D. Cal. 2012).

[65] *Id.* at 562.

[66] *See* Docket No. 1 ¶¶ 36, 37.

13
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

obtain the beneficial interest in the DOT pursuant to the transfer that Plaintiffs allege took place."[67] But neither may the court rely on Defendants' assertions of this chain of title, which appears to be a factual matter that Plaintiffs dispute. And although the court notices the September 2008 Purchase and Assumption Agreement between Chase and the FDIC Receiver of WaMu's assets,[68] the court may not notice, as undisputed fact, that the effect of this agreement was to transfer to Chase the beneficial interest in question, that interest already having been "spun off" according to the Complaint. It is not clear from the Complaint or the noticed documents whether Chase properly owned the beneficial interest that it purported to transfer in the first and second Assignment of DOT.[69] The allegations of false signatures to which Defendants have not responded further strengthen Plaintiffs' allegation of wrongful conduct. Plaintiffs have state a facially plausible claim that the nonjudicial foreclosure process was not founded on a valid, beneficial interest.

### c. Prejudice or Harm

Plaintiffs' allege that if Defendants proceed with the foreclosure sale, Plaintiffs will be subject to the wrongful loss of their home.[70] Defendants have not challenged this allegation as inadequate. As expressed by the court in *Tamburri*, "the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default."[71] The prospect of wrongful foreclosure stemming from the issuance of foreclosure not grounded in a valid, beneficial interest is thus sufficient.

---

[67] Docket No. 15 at 7.

[68] *See id.*, Ex. D.

[69] *Cf. Tamburri*, 2011 WL 6294472 at *10-14 (finding plaintiff's allegation that the foreclosing bank did not own the loan at the time of issuing the notice of default sufficient to sufficient to state a claim for wrongful foreclosure). *See also Selby v. Bank of America, Inc.*, No. 09cv2079 BTM(JMA), 2010 WL 4347629, at *4 (S.D. Cal. Oct. 27, 2010) (finding problematic "gaps in the documentation pertaining to the Deed of Trust and the transfer of rights thereunder," but granting motion to dismiss because plaintiff failed to allege that the entity "was not actually the beneficiary" or that the agent "was not an authorized agent of the beneficiary or trustee").

[70] *See* Docket No. 1 ¶ 40.

[71] *Tamburri*, 2011 WL 6294472 at *14 (citing *Castillo v. Skoba*, No. 10cv1838 BTM, 2010 WL 3986953, at*2 (S.D. Cal. Oct. 8, 2010) ("The power of sale in a nonjudicial foreclosure may only be exercised when a notice of default has first been recorded.... [A]ny foreclosure sale based on a

14
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

### 3. Injunctive Relief

Plaintiffs' third cause of action for injunctive relief is framed as a remedy for Plaintiffs' wrongful foreclosure claim.[72] Because injunctive relief is a remedy, not a cause of action, this cause of action fails. Plaintiffs may seek injunctive relief as a remedy if they successfully amend the Complaint to resolve the above noted deficiencies.

### 4. Additional Claims

Plaintiffs additionally argue that they should be able to amend the Complaint to include violations of Civil Code § 2923.5 and for unfair business practices pursuant to Bus. & Professions Code § 17200, as well as for violations associated with the Pooling and Service Agreement of the entities involved in the first and second Assignment of DOT. These claims are not presently before the court. To the extent plaintiffs intend to assert new or different claims for relief, they must make an appropriate application pursuant to Fed. R. Civ. P. 15.

## IV. CONCLUSION

Defendants' motion to dismiss is GRANTED with leave to amend with respect to Plaintiffs' first cause of action and GRANTED without leave to amend with respect to the third cause of action for injunctive relief. Defendants' motion is DENIED with respect to the second cause of action. Any amended complaint shall be filed no later than October 1, 2012.

**IT IS SO ORDERED.**

Dated: September 7, 2012

*(signature)*
PAUL S. GREWAL
United States Magistrate Judge

---

void notice of default is also void.") (citing Cal. Civ. Code § 2924; 5–123 California Real Estate Law & Practice § 123.01).

[72] *See* Docket No. 1 ¶ 40.

15
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**