**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAURICIO MENA AND ALMA MENA, | ) Case No.: 12-1257 PSG |
| Plaintiffs, | ) |
| v. | ) **ORDER GRANTING DEFENDANTS'** |
| | ) **MOTION TO DISMISS** |
| JP MORGAN CHASE BANK, N.A.; U.S. | ) |
| BANK, N.A.; BANK OF AMERICA, N.A., | ) **(Re: Docket No. 28)** |
| | ) |
| Defendants. | ) |

In this mortgage foreclosure action, Defendants JP Morgan Chase Bank, N.A., U.S. Bank, N.A., and Bank of America, N.A. (collectively "Defendants") move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the slander of title claim brought by Plaintiffs Mauricio Mena and Alma Mena ("Plaintiffs"). Plaintiffs oppose. Having considered the parties' papers and oral arguments, the court GRANTS Defendants' motion to dismiss without leave to amend.

1

Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## I. BACKGROUND

Unless otherwise noted, the court draws the following facts, taken as true for the purposes of the motion to dismiss, from Plaintiffs' First Amended Complaint ("FAC").[1] On March 15, 2007, Plaintiffs signed two deeds of trust against real property located at 1777 Nomark Ct., San Jose, California 95125 (the "Property") to obtain promissory notes supporting two different loans.[2] The first deed of trust ("DOT 1") secured a promissory note in the amount of $1,000,000 and was recorded on or about March 22, 2007 in Santa Clara County.[3] DOT 1 named California Reconveyance ("CRC") as Trustee and Washington Mutual Bank as the original lender and beneficiary.[4] The second deed of trust ("DOT 2") secured a subordinate promissory note in the amount of $237,363 and likewise was recorded on or about March 22, 2007 in Santa Clara County.[5] DOT 2 also named CRC as the Trustee and Washington Mutual Bank as the original lender and beneficiary.[6]

On or about April 26, 2007, Washington Mutual Bank transferred the primary and subordinate promissory notes ("Notes") and DOT 1 and DOT 2 to WaMu Asset Acceptance Corp. ("WaMu Asset"), which in turn transferred its interest to WaMu Mortgage Pass-Through Certificates Series 2007-OA4 ("WaMu Trust").[7] The WaMu Trust was registered with the Securities and Exchange Commission.[8]

---

[1] *See* Docket No. 27.

[2] *See id.* ¶¶ 16-17.

[3] *See id.* ¶ 16.

[4] *See id.*

[5] *See id.* ¶ 17.

[6] *See id.*

[7] *See id.* ¶ 18.

[8] *See id.*

2
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

On January 4, 2008, WaMu Asset filed a Form 15-15D "Certification and Notice of Termination of Registration" of the WaMu Trust with the SEC.[9] On March 28, 2008, the WaMu trust filed a Form 10-K with the SEC and, according to Plaintiffs, was dissolved.[10] Plaintiffs allege that as a result of and pursuant to Washington state law, the WaMu trust assets were distributed to the WaMu Trust's certificate holders, and those persons became the only mortgagees and holders of the Notes, DOT 1, and DOT 2.[11]

Defendants disagree with Plaintiffs' assertion that the filing of Form 10-K with the SEC dissolved the trust, or that assets of the WaMu Trust were distributed to the certificate holders as a result. Defendants state that on September 25, 2008, WaMu was declared insolvent and the FDIC was appointed Receiver ("FDIC-Receiver").[12] On that same day, pursuant to a Purchase and Assumption Agreement, JPMorgan Chase Bank, N.A. ("Chase") obtained any and all right, title, and interest to WaMu's assets.[13]

On November 3, 2009, Chase executed a transfer of all beneficial interest it held in the DOT 1 to U.S. Bank as Trustee via an Assignment of Deed of Trust ("DOT 1 Assignment") prepared by CRC, and the assignment was recorded on November 12, 2009 in Santa Clara County.[14] The DOT 1 Assignment was signed by Deborah Brignac ("Brignac") as Vice President of Chase and notarized by Jessica Erin Snedden.[15] According to Plaintiffs, Chase's attempt to transfer its interest occurred two years after its interest in DOT 1 was sold.[16]

---

[9] *See id.* ¶ 19.

[10] *See id.* ¶ 20.

[11] *See* Docket No. 27 ¶ 20.

[12] *See* Docket No. 15 at 2; Docket No. 16 Ex. D.

[13] *See id.*

[14] *See id.* ¶ 21.

3
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

On November 3, 2009, CRC also began foreclosure proceedings against Plaintiffs by recording in Santa Clara County a "Notice of Default and Election to Sell Under Deed of Trust" ("NOD") against the Property.[17] The NOD includes a statement that the requirements of California Civil Code Section 2923.5 were met.[18] CRC then sent Plaintiffs a "Notice of Trustee's Sale" ("NOTS") on March 8, 2010.[19] According to Plaintiffs, with the NOTS, CRC announced its intention to foreclose on the Property and that it acted on behalf of Washington Mutual Bank, the original beneficiary.[20] Brignac also signed the NOTS as Vice President of CRC.[21] The NOTS was recorded on February 16, 2010 in Santa Clara County.[22]

On February 3, 2011, Chase executed a second Assignment of Deed of Trust ("Second DOT 1 Assignment") purporting to transfer its beneficial interests in DOT 1 to LaSalle Bank N.A. as trustee for the WaMu Trust.[23] The Second DOT 1 Assignment was signed by Wanda Chapman as Vice President of Chase, notarized by Debra Brown, and recorded on February 15, 2011.[24] According to Plaintiffs, the transfer took place over three years after Chase sold its interest to the WaMU Trust and a year after Chase assigned its interest in DOT 1 to U.S. Bank.[25]

---

[15] *See id.*

[16] *See id.*

[17] *See id.* ¶ 22.

[18] *See id.*

[19] *See id.* ¶ 23.

[20] *See id.*

[21] *See id.*

[22] *See id.*

[23] *See id.* ¶ 24.

[24] *See id.*

[25] *See id.*

4
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

On March 21, 2011, CRC as the trustee to DOT 1 sent Plaintiffs a second Notice of Trustee's Sale ("Second NOTS") to notice them of CRC's intent to foreclose on the Property.[26] Elvia Arciniega signed the Second NOTS as Assistant Secretary of CRC, and it was recorded on February 25, 2011 in Santa Clara County.[27] CRC sent a third Notice of Trustee's Sale ("Third NOTS") on August 23, 2011, which was signed by Casey Kealoha as Assistant Secretary of CRC and recorded on August 2, 2011 in Santa Clara County.[28] According to Plaintiffs, the Third NOTS indicated that CRC acted on behalf of Washington Mutual Bank as beneficiary.[29]

Based on these allegations, Plaintiffs filed a complaint asserting three causes of action: (1) slander of title; (2) wrongful foreclosure; and (3) injunctive relief to prevent foreclosure.[30] On September 7, 2012, the court dismissed with prejudice the injunctive relief claim and dismissed without prejudice the slander of title claim.[31] The court denied the motion to dismiss the wrongful foreclosure claim.[32] Plaintiffs filed their first amended complaint ("FAC") in which they bring causes of action for wrongful foreclosure and slander of title.[33] Defendants seek now to dismiss with prejudice the slander of title claim.[34]

---

[26] *See id.* ¶ 25.

[27] *See id.*

[28] *See id.* ¶ 26.

[29] *See id.*

[30] *See* Docket No. 1.

[31] *See* Docket No. 26.

[32] *See id.*

[33] *See* Docket No. 27.

[34] *See* Docket No. 28.

Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## II.     LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[35] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[36] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[38]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[39] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[40] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[41] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[42]

---

[35] Fed. R. Civ. P. 8(a)(2).

[36] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[38] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[39] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[40] *See id.* at 1061.

[41] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[42] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

6
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## III. DISCUSSION

Slander of title "occurs when a person, without privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss."[43] "The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title."[44] To state a claim for slander of title, Plaintiffs must allege: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss."[45]

Defendants argue that Plaintiffs cannot maintain a slander of title cause of action for several reasons. They assert that Plaintiffs cannot allege sufficiently falsity because as the named trustee CRC had authority under both of the DOTs and pursuant to California Civil Code Section 2924(a) to initiate foreclosure proceedings and because the signatures of the same people in different corporate positions do not necessarily indicate falsity.[46] Defendants argue that Plaintiffs cannot allege lack of privilege because they have not alleged sufficient facts to show malice.[47] They also challenge Plaintiffs' claim that they suffered pecuniary loss as a result.[48]

Plaintiffs respond that the various NOTSs and NODs contain false information because CRC neither had authority to foreclose and because the signatures are "robo-signatures" that reflect

---

[43] *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 85 (1997).

[44] *Stamas v. City of Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal. 2011) (citing *Seely v. Seymour*, 190 Cal. App. 3d 844, 857 (1987)). *See also Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012).

[45] *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009).

[46] *See* Docket No. 28.

[47] *See id.*

[48] *See id.*

7
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

false names or titles.[49] Plaintiffs also rely on the alleged robo-signatures to support their allegations that Defendants knew about the falsity and therefore acted with malice by recording the NOTSs and NODs.[50] Plaintiffs assert that their malice allegations suffice to remove any privilege protection from the various documents.[51] Plaintiffs also contend that they suffered pecuniary loss through their inability to refinance their loans, through their litigation expenses, and through loss of vendibility of the Property.[52]

As the court explained in the September 7 order, Plaintiffs have alleged sufficiently publication and falsity and the court employs that same reasoning here.[53] The NODs and the NOTSs constitute "publications," and Plaintiffs' allegations about the signatures suffice for the falsity element. Defendants argue that having one person fill different positions for different companies does not necessarily reflect falsity. But Plaintiffs allege that the various signers do not actually hold those positions and that different people signed as the same position. As the court noted in its earlier order, those allegations are sufficient to support the falsity element.[54] The court, however, again rejects Plaintiffs' allegations regarding CRC's ability to initiate foreclosure proceedings in light of undisputed documents indicating that CRC was the Trustee of DOT 1.[55]

In the September 7 order, the court found that Plaintiffs failed to allege sufficient facts supporting the privilege element and the loss element.[56] California Civil Code Section 47(c)(1)

---

[49] *See* Docket No. 29.

[50] *See id.*

[51] *See id.*

[52] *See id.*

[53] *See* Docket No. 26.

[54] *See id.*; *see also Ogilvie*, 2012 WL 3010986, at *3.

[55] *See* Docket No. 16, Ex. A at 3; Docket No. 26.

[56] *See* Docket No. 26.

8
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

defines a privileged communication, among others, as a "communication, without malice, [made] to a person interested therein (1) by one who is also interested." The statutorily required notices in nonjudicial foreclosure procedures are privileged communications under the qualified common-interest privilege of Section 47.[57] Malice as an exception to the privilege doctrine may be established by a showing that the defendant "lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."[58]

In the FAC, Plaintiffs allege that Defendants knew that the signatures on the NOTSs and the NODs were "robo-signed" and that the signatures do not represent accurate positions of the employees.[59] Plaintiffs also allege that Defendants knew CRC had no power to initiate the foreclosure because of the dissolution of the WaMu Trust and Chase's earlier transfers of the beneficiary interest.[60] According to Plaintiffs, this knowledge reflects Defendants' malice in publishing false documents.

As the court explained both in its September 7 order and above, according to undisputed documents, CRC had authority as the trustee to initiate foreclosure proceedings.[61] To the extent that Plaintiffs rely on CRC's lack of authority to allege falsity and thereby to allege malice, their argument fails. As to the robo-signatures claim, Plaintiffs have sufficiently alleged that Defendants acted with knowledge of the falsity of the signatures and as such acted with malice.

Plaintiffs have failed, however, to correct the deficiencies in the pecuniary loss element. Plaintiffs allege that they could not refinance their loan, lost vendibility in their house, and suffered

---

[57] *See Ogilvie*, 2012 WL 3010986, at *4; *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008).
[58] *See Kachlon*, 168 Cal. App. 4th at 336 (citations omitted).
[59] *See* Docket No. 27 ¶¶ 37, 39, 40, 41.
[60] *See id.* ¶¶ 32, 42, 45.
[61] *See* Docket No. 16 Ex. A; Docket No. 26.

9
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

litigation costs.[62] But as the court noted in the September 7 order, "fees incurred to quiet title are recoverable [but] fees incurred prosecuting the slander of title are not,"[63] and so neither the attorneys' fees nor the vendibility claim suffice to show pecuniary loss. Plaintiffs furthermore have not alleged any facts to support that they attempted to refinance their home and were rejected because of the NOTSs or the NODs. Plaintiffs, therefore, have not alleged sufficient facts to show pecuniary loss. Accordingly, the court dismisses the slander of title claim.

The court also finds that the complaint cannot be saved by further amendment. Plaintiffs in their opposition have not identified any other facts that could correct the deficiencies in the pecuniary loss element that the court now has twice identified in dismissing the slander of title claim.[64] In light of Plaintiffs' failure to correct the deficiencies in their original complaint and their failure to point to other facts that could supplement their pecuniary loss claim in their opposition, the court finds that granting any further leave to amend would be futile and could not save the complaint.[65] The court thus dismisses Plaintiffs' slander of title claim without leave to amend.

**IT IS SO ORDERED.**

Dated:   January 14, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[62] *See* Docket No. 27 ¶¶ 35, 46.

[63] *See Ogilvie*, 2012 WL 3010986, at *4.

[64] *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dimiss the complaint with or without prejudice."); *Garbutt v. Adamarc Financial Co.*, Case No. C10-05338 HRL, 2011 WL 2784548, at *3 (N.D. Cal. July 13, 2011) (noting that plaintiff failed to provide additional facts in opposition that supported providing leave to amend).

[65] *See Garbutt*, 2011 WL 2784548, at *3.

10
Case No.: 12-1257 PSG
**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**